### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

02 JAN 14  FH 1: 37

COSTILLO ARTEEN JOHNSON,                      )
                                              )
        Plaintiff,                      )
                                              )
v.                                            )       CV 99-BU-1378-M
                                              )
ROBERT COLEMAN, et.al.,                       )
                                              )
        Defendants.                     )

**ENTERED**

**JAN 1 4 2002**

## MEMORANDUM OF OPINION

This is a civil action pursuant to 42 U.S.C. § 1983 in which the plaintiff, Costillo

Arteen Johnson, alleges that his constitutional rights were violated while incarcerated at

W.E.Donaldson Correctional Facility in Bessemer, Alabama.   The defendants named by

the plaintiff in this action are:  Correctional Officer Robert Coleman, Lieutenant Fredrick

Freeman, Warden Billy Mitchem, and Alabama Department of Corrections Commissioner

Michael Haley.[1]  Plaintiff seeks monetary damages and surgery to remove a scar on his neck.


On March 2, 2001, the magistrate judge entered an order for special report directing

that copies of the complaint in this action be forwarded to defendants Coleman, Mitchem and

---

[1] In his complaint, plaintiff also named Lt. Fredrick Freeman as a defendant. In a Report and Recommendation entered March 2, 2001, the undersigned magistrate judge recommended the dismissal of all claims against Lt. Freeman. By order entered April 9, 2001, the district judge adopted the magistrate judge's recommendation, dismissing all claims against Lt. Fredrick Freeman.

37

Haley requesting that they file a special report responding to the factual allegations of the complaint. On May 3, 2001, the defendants filed their special report attaching pertinent documents and affidavits. By order of May 15, 2001, the parties were notified that the special report filed by the defendants would be construed as a motion for summary judgment, and the plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of Civil Procedure.* Plaintiff responded to the notification on July 30, 2001.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*,

2

477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted). However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986).

## FACTUAL ALLEGATIONS

### *Plaintiff's Complaint*

In his amended complaint, plaintiff states on May 8, 1998, he was attacked by inmate James Broughton "in open Dorm-F" of William E. Donaldson Correctional Facility, the State of Alabama's "highest [security] level maximum facility." Amended Complaint (Document

3

#17) at 5. The altercation began because inmate Broughton, "a known violent inmate for assault on prisoner[s], [correctional officers] and violent escapes," approached the plaintiff and tried to provoke the plaintiff into a fight by making derogatory homosexual comments, knowing the plaintiff "had zero tolerance for homosexual activity . . . ." *Id.* Plaintiff told Broughton to "watch [his] mouth, as plaintiff turned away from Broughton. At that time, inmate Broughton cut him "across the neck and throat" with a "hobby craft type" knife. *Id.*

Plaintiff "looked for a[n] officer for help, but there w[ere] none to be found in F-Dorm."*Id.* at 6. When plaintiff attempted to defend himself with a broom, Broughton "insert[ed] the knife in the left side of [plaintiff's] cran[ium]." *Id.* Plaintiff contends that he heard an on-looker shout to Broughton, "'Black' give me the knife nigger you know the Police is coming." *Id.* "Inmate Broughton ran back into F-Dorm [and] . . . Johnson ran to G-dorm to the sink." *Id.* Plaintiff avers that the "incident lasted for 20 minutes." *Id.* "Officer Coleman came in G-Dorm and took [the plaintiff] to the shift [o]ffice [and] plaintiff was sent to the infirm[ary] for injuries sustained." *Id.* Plaintiff states that Broughton admitted to "Capt. Mayers . . . [that he] cut P-Johnson." *Id.* at 7.

In spite of same, both inmates were charged with, and found guilty of Fighting Without A Weapon.[2]

---

[2] *Id.* at 3. Although plaintiff has made it clear that he does not wish to attack the constitutional validity of the disciplinary infraction, he contends that changes on the face of the disciplinary reports which altered the charges against both inmates from Fighting With a Weapon to Fighting Without a Weapon are evidence that defendant Coleman was trying to cover up the fact that he was not at his post when the fight occurred. Special Report (Exhibit 6 to Document #25) and Amended Complaint (Document #17) at 6-7.

4

Plaintiff contends the attack was able to take place because Officer Coleman "was not

at his post or any other Officers in concern (sic) to F-Dorm Cube." *Id.* at 6. Additionally,

Warden Mitchem "operated Donaldson Correctional Facility while [severely] understaffed,

to wit: ratio between Correctional Officers to prisoners was around [one officer for almost

10 prisoners]." *Id.* at 8. Plaintiff states that Warden Mitchem made no effort to alleviate the

situation, that the prison was overcrowded, and that Mitchem "continued to allow life

without [i]nmates to remain in open Dorms outside of Donaldson['s] structured compound.

[Mitchem] over worked (sic) the staff he had by allowing them to work double and [triple]

shifts 3 and 4 days a week[, a]t the risk of his staff and prisoners under his control." *Id.* As

such, plaintiff contends there were no corrections officers to assist the plaintiff when he was

attacked by a known violent inmate.

Finally, plaintiff names Prison Commissioner Michael Haley as a defendant because

Haley was "aware of the 'dangerous situation' (as define[ed] by COI's that work at

Donaldson Correctional Facility) [and] failed to take reasonable measure[s] to [secure]

Donaldson prison under his reign (sic) where the National average to officer to prisoner to

1 to 4.8, (sic) in the year (1998) [and] the Ala[bama] Dep[artment] of Corrections was 1 to

9.8 . . . ." *Id.* at 9. Plaintiff contends that Commissioner Haley should have asked the federal

government to take over the Alabama Department of Corrections because Alabama could not

provide secure prisons. *Id.*

### ***Defendants' Special Report***

5

Defendants Coleman, Mitchem and Haley assert the following legal defenses: plaintiff failed to state a cause of action, defendants were not deliberately indifferent to plaintiff's "needs in violation of the Eighth Amendment,"  plaintiff's case is due to be dismissed because it is based upon "the theory of Respondeat Superior,"  defendants are entitled to absolute immunity to the extent plaintiff makes claims against them in their official capacities and qualified immunity to the extent plaintiff makes claims against them in their individual capacities, and that plaintiff's claims are barred "by the two year statute of limitations." Special Report (Document #25) at 1-2.

**Defendant Coleman**

Corrections Officer Robert Coleman contends that  "On May 8, 1998, . . . while performing my duties as the Rover on the South Unit observed inmate Costillo Johnson , . . . holding a broom and arguing with inmate James Broughton. After observing inmate Broughton run into F Dormitory and inmate Johnson run to G Dormitory, . . .I . . . went into G Dormitory and found inmate Johnson at the sink with a cut on the left side of his . . . head." Coleman affidavit (Exhibit 1 to Document #25) at 1. Coleman then led the plaintiff to the Shift Commanders Officer, and Sgt. Myers led the plaintiff to the infirmary, where plaintiff was treated and escorted  to the Barber Shop. *Id.*


Defendant Coleman then "escorted Johnson . . . to the Shift Office, during which time inmate Johnson admitted that inmate Broughton and inmate Johnson were fighting." *Id.* at

6

2. Further, inmate Broughton "advised . . . [defendant Coleman] that Broughton and Johnson were joking with each other and inmate Johnson got mad." *Id.*   Coleman also states that Sgt. Patricia Myers questioned both inmates and that "Johnson and Broughton stated that the fight began with inmate Broughton calling inmate Johnson names, joking around, and inmate Johnson got mad and initiated the first contact by slapping inmate Broughton for putting his finger in inmate Johnson's face."[3]

Coleman then denies violating the plaintiff's "constitutional or civil rights." *Id.* at 2.

**Defendant Mitchem**

In response to the plaintiff's allegations regarding understaffing of officers at W.E. Donaldson Correctional Facility and housing of Life Without Parole inmates, Warden Mitchem attests:

>  All minimum required posts at William E. Donaldson Correctional Facility are     manned with the required staffing level 24 hours a day seven (7) days a  week.

> All of our living area cubicles are manned 24 hours a day seven (7) days a week. William E. Donaldson Correctional Facility is a level 6 facility, which houses Life Without Parole inmates in both dormitories on the South Unit and cell blocks inside the facility. Rovers are assigned to the dormitories on the South Unit, as well as the cell blocks 24 hours a day seven (7) days a week.

> All personnel employed at W.E. Donaldson . . . must adhere to the Alabama Department of Corrections Administrative Regulations and be in compliance with the Standard Operating Procedures of this facility.

---

[3] *Id.* See also, the 'State of Alabama Board of Corrections Institutional Report" (Exhibit 4 to Document #25) written by Officer Coleman.

Mitchem Affidavit (Exhibit 2 to Document #25) at 1.

Warden Mitchem also contends that "[b]ased on the incident report, inmate Costillo Johnson initiated the physical confrontation between him and the other inmate involved." *Id.* at 2. Mitchem also denies violating the plaintiff's "constitutional or civil rights." *Id.*

### Commissioner Michael W. Haley

Prison Commissioner Michael Haley denies he violated any rights of the plaintiff and attests he does "not know the Plaintiff in this matter and to my knowledge have not had any contact with him. As Commissioner, I do not control the daily operation of W.E. Donaldson Correctional Facility and had no involvement in the incidents of which the plaintiff complains." Haley Affidavit (Exhibit 3 to Document #24) at 1.

### Institutional Incident Report and attachments

Defendants also attach documents to the Institutional Incident Report. (Exhibit 4 to Document #24) at 3-5. The first document sets out the criminal history of the plaintiff and inmate Broughton as it applies to their present terms of confinement. *Id.* at 3. It shows that inmate James Broughton is serving a sentence of Life Without Parole as a result of Tallapoosa County convictions for 2 counts of Burglary III and one count of Robbery first degree. *Id.* The plaintiff is presently serving a Life sentence as a result of Jefferson County convictions for one count of Burglary I, one count of Sodomy I, and two counts of Robbery I. *Id.* A brief narrative within the document reads that the fight began because "inmate

8

Broughton [was] talking abou[t] inmate Johnson's daddy and alleged homosexual activities."
*Id.*

The second document is a Department of Corrections Emergency Treatment Record for inmate James Broughton. *Id.* at 4. Broughton's only injuries were a "small cut across the [right] index finger . . . [and that he felt] like a fool." *Id.*

The third and final document is a Department of Corrections Emergency Treatment Record for the plaintiff. *Id.* at 5. While the body chart itself shows that Nurse David Cagle did not mark same with the plaintiff's actual wounds, Nurse Cagle did write an extensive description of plaintiff's wounds. *Id.* As plaintiff told Nurse Cagle that his injuries consisted of "[j]ust some scratches . . .", Nurse Cagle wrote that plaintiff had scratches to the left side of his neck, a bleeding open wound approximately seven (7) inches long to the left side of his cranium (with no profuse edema noted), one long open scratch to the left side of his neck, one small scratch to the left underside of his jaw, one scratch to his left posterior neck, and one small scratch on his right chest. *Id.* Nurse Cagle's ultimate diagnosis was that plaintiff was suffering from "cuts, scratches, [and] bumps." *Id.* Cagle instructed the plaintiff to keep the wound on his head covered with gauze, to allow the scratches to heal in the open air, and to return to sick call if he began having "blurred vision, gross swelling, [or] dizz[iness]." *Id.*

**Disciplinary Infractions**

9

Defendants have also included copies of two (2) disciplinary reports  wherein the plaintiff and inmate Broughton were charged with  Fighting Without a Weapon.[4]  Inmate Broughton pled guilty to the violation.[5]  Plaintiff chose to have a hearing, and made a statement in writing explaining

his version of events. Plaintiff also waived the only (1) witness he intended to call in his behalf at the disciplinary hearing.[6]  Officer Coleman testified at the disciplinary hearing and denied seeing inmate Broughton with a knife when asked, although Coleman also admitted he was more than 15 feet away from both inmates when he initially observed the altercation.[7]  In finding the plaintiff guilty of fighting without a weapon, the hearing officer stated that the plaintiff  "was involved in a fight with another inmate by engaging in mutual combat without a weapon.  The hearing officer further finds that during the combat the principal aggressor could not be determined." *Id.* at 2-3.

### *Plaintiff's Response*

Plaintiff contends that "[the defendants' special report] and attachments are inconsistent [with] what actually happen[ed] on May 8, 1998." Johnson affidavit (Exhibit A to Document #32) at 1.  Further, plaintiff specifically denies he told Sgt. Meyers that he

---

[4]  (Exhibit 5 to Document #24) is the Broughton Disciplinary Report and (Exhibit 6 to Document #24) is the plaintiff's Disciplinary Report.

[5]  (Exhibit 5 to Document #24) at 1.

[6]  (Exhibit 6 to Document #24) at 1.

[7]  *Id.* at 1-3.

initiated the first physical contact in the fight between he and inmate Broughton. *Id.* at 1-3.

He argues that overcrowding and severe officer shortages within the Alabama Department

of Corrections is a well publicized fact and attaches a newspaper article in support of same.[8]

He further states that it is a "factual impossibility that the D.O.C. while [severely]

understaffed can provide adequate manpower to cover all posts 24/hrs 7 days (sic) a week.

*Id.* at 2. Next, plaintiff contends that on May 8, 1998, there were "no officers to be found on

the southside F-DORM cubicle, floor or outside at the time of the incident and

approx[imately] 10 minutes before the incident. *Id.* Finally, plaintiff points out that after the

incident, Sgt. Meyers, "is alleged to have [n]otified [Mr. M.C. Smith] of the incident at I&I

Division. A weapon had to be involved for I & I to be notified." *Id.*

　　　Plaintiff also attaches statements of four (4) inmates. Inmate David Allen attests that

　　　he

"personally observed [plaintiff] being cut by inmate James Broughton. Prisoner Johnson was

bleeding about the neck and throat trying to stop James Broughton from cutting him with a

knife he had in his hand. There [were] no COI's in the cubical in F-Dorm where this took

---

[8] *Id.* at 2 and (Exhibit I to Document #32). Said exhibit is a copy of an article from an unknown newspaper which opines that the Alabama prison system is subpar. Specifically, Alabama's inmate to officer ratio for 1999 at approximately one officer for every ten inmates. Alabama Department of Corrections Spokesman John Hamm is quoted as saying, "Our inmate population is increasing all the time, and we're trying different means to get as many officers as possible . . . . It's a crisis situation now, and it's got to get better." *Id.* Further, Attorney General Bill Pryor is quoted as saying, "I've been to a lot of these prisons. They're kind of scary. It's not a healthy situation for officers or inmates." Said statistical information and quotations constitute impermissible hearsay and are not admissible evidence by the court in its determination regarding summary judgment. *Macuba v. DoBoer*, 193 F.3d 1316, 1322-1325 (11th Cir. 1999).

place or on the floor. Johnson eventually ran outside where Broughton followed him swinging his knife [at] him." Allen affidavit (Exhibit C to Document #32).

Inmate Theron Whitfield attests that he also observed the plaintiff "being cut by inmate James Broughton[, ] better known as 'Black'. Prisoner Johnson was bleeding about his neck and throat trying to stop Black [from] cutting him with the knife he had in his hand. . . ." Whitfield affidavit (Exhibit D to Document #32).

Inmate Cleveland Johnson attests that he saw plaintiff at the barber shop immediately after the altercation where he observed the plaintiff "bleeding about his neck and throat . . . .[T]here was blood also running from the left side of his head. I went to the door and inquired [as to] what happen[ed] to him . . . .[Plaintiff] told me inmate 'Black' (James Broughton) had cut him with some kind of hobbie (sic) craft knife." Johnson affidavit (Exhibit E to Document #32).

Inmate Sumnar Brewster also saw the plaintiff's injuries on May 8, 1998. Sumner affidavit (Exhibit F to Document #32). Further, he and the plaintiff were called to Sgt. Meyers' office on May 15, 1998. *Id.* When the plaintiff exited Meyers' office, he stated to Brewster that "They release me . . . 'Black' told them he cut me with a razor, though he lied, it was a hobby craft knife. . . .I can't believe he actually admitted to cutting me, thou (sic) the injuries I sustain is obvious." *Id.*

Plaintiff also includes a picture of himself taken on May 16, 1998, to show his injuries (Exhibit H to Document #32).

## FAILURE TO PROTECT

"[W]hen an inmate is confronted with a defendant's properly supported summary judgment motion, the inmate in order 'to survive summary judgment on his section 1983, Eighth Amendment claim, [is] required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) causation." *Roy v. Johnson*, 97 F.Supp. 2d 1102, 1108, *quoting LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993), *cert. denied*, ([510] U.S. [1164], 114 S.Ct. 1189, 127 L.Ed.2d at 1535).

The Eighth Amendment's prohibition on cruel and unusual punishments imposes upon prison officials the duty to "'take reasonable measures to guarantee the safety of the inmates'" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*citing Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This duty includes protecting inmates "from physical assault by other inmates." *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). However, not every injury inflicted by one prisoner upon another "translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. at 834. *See also Zatler v. Wainwright*, 802 F.2d at 400; *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. 1981). It is only when prison officials' deliberate indifference to a known danger or risk exposes an inmate to "objectively, 'sufficiently serious'" harm, that a constitutional violation occurs. *Farmer v. Brennan*, 511 U.S. at 834. *See also Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.), *cert. denied*, 496 U.S. 928 (1990).

A danger or risk is "known" only if the prison official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at] inference." *Farmer v. Brennan*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived, but did not," is not sufficient to establish liability on the part of the official." *Id.* at 838. Furthermore, "[t]he known risk of injury must be a "'strong likelihood, rather than a mere possibility."'" *Brown v. Hughes*, 894 F.2d at 1537 (*citing Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989)).

Once it is established that a prison official knew of a substantial danger or risk to an inmate, it must then be shown that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. at 842. Deliberate indifference, however, requires "a state of mind more blameworthy than negligence." *Id.* at 835. Consequently, prison officials are not liable for merely negligent failure to protect a prisoner from attack by another inmate. *Brown v. Hughes*, 894 F.2d at 1537. *See also Davidson v. Cannon*, 4

74 U.S. 344, 347 (1986); *Stubbs v. Dudley*, 849 F.2d 83, 85 (2d Cir. 1988), *cert. denied*, 489 U.S. 1034 (1989).

Prison officials are only considered to be deliberately indifferent to a prisoner's constitutional rights "either because they actually intended to deprive him of some right, or

14

because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates." *Zatler*, 802 F.2d at 400-01, *quoting Branchcomb v. Brewer*, 669 F.2d 1297, 1298 (8th Cir. 1982). "[T]here must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Zatler*, 802 F.2d at 400, *quoting Williams v. Bennett*, 689 F.2d 1370 (1982). Only a conscious or callous indifference to a known danger offends "'evolving standards of decency,' thereby rising to the level of a constitutional tort." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990), *citing Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S.Ct. 285, 291-92, 50 L.Ed.2d 251 (1976). "The known risk of injury must be a 'strong likelihood, rather than a mere possibility' before a [defendant's] failure to act can constitute deliberate indifference." *Brown*, 894 F.2d at 1537, *citing Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989).

Plaintiff has not set forth sufficient facts to show that defendants Coleman, Mitchem or Haley were aware of a substantial risk of serious harm to the plaintiff from (1) a particular source, or (2) because of reasons personal to the plaintiff, or (3) because all prisoners in the plaintiff's situation faced the same risk. *Farmer v. Brennan*, 511 U.S. at 826.

Specifically, plaintiff has not alleged in either his complaint or in his affidavit in opposition to defendants' motion for summary judgment that he fought with Broughton at any time prior to the attack in question or that he informed prison authorities that Broughton was a threat to him. While plaintiff does state that Broughton had a history of

15

violent behavior while in prison, the only evidence presented by plaintiff that Broughton directed any attention toward him was because of plaintiff's opinion concerning homosexuality. This evidence suggests the possibility, but not a strong likelihood, that an altercation would ensue between the plaintiff and another prisoner. The Court simply will not derive the same constitutional significance between inmates ribbing one another about homosexuality in order to place the plaintiff in the same category as an openly transsexual inmate such as the plaintiff in *Farmer*.

Plaintiff also argues that an edict contained in *Pugh v. Locke*, 406 F. Supp. 318, 333 (1976) mandates that Alabama prisons must segregate inmates serving life without parole from being housed with inmates who are awaiting parole dates. (Document #32) at 3. Plaintiff concludes that the continued violation of this order allowed inmate Broughton the opportunity to attack the plaintiff, thereby subjecting him to cruel and unusual punishment. Plaintiff's claims are without merit. It is true that the Court in *Pugh* "ordered specific injunctive relief, . . . . including, . . . that only minimum custody inmates be housed in dormitories . . . ." *Besselaar v. Siegelman*, 2001 WL 936196, 15, — F.Supp.2d —, (2001) (*citing Pugh v. Locke*, 406 F.Supp. 331-335.) However, "the specific injunctive relief ordered in *Pugh* and related cases is no longer in effect. In *Newman v. Alabama*, Civil Action No. 3501-N (M.D. Ala. 1988), on December 28, 1988, an order was entered dismissing with prejudice the *Newman* action, thus finally resolving *Pugh* . . . In a lengthy memorandum opinion, the court found that the conditions present in the prison system in the 1970s no

16

longer existed. Thus, the court dissolved the injunction and returned the prison system to the State of Alabama." *Id.* at 6.  As such, plaintiff's assertion that  violation of a  federal injunction  caused  him  to  be  subjected  to  cruel  and  unusual  punishment  is  due  to  be dismissed.

Although plaintiff contends that the prison is understaffed and overcrowded, he does not   deny Warden Mitchem's assertion  that all required minimum posts  are filled  by corrections officers 24 hours per day, 7 days per week. Nor does he deny that  living area cubicles are manned 24 hours per day  (7) days per week, and that rovers are assigned to the dormitories on the South Unit, as well as the cell blocks 24 hours per day seven (7) days per week. Finally, he does not deny that it is policy for all employees at Donaldson Correctional Facility to follow Administrative Regulations and Standard Operating Procedure.  Instead, plaintiff   argues that it is a "factual impossibility that the D.O.C. while [severely] understaffed can provide adequate manpower to cover all posts 24/hrs 7 days a week . . . . " Johnson affidavit (Exhibit A to Document #32) at 2.  Plaintiff  provides no factual basis to illustrate how the present staffing system is not being followed or is inherently inadequate, other than his assertions regarding his encounter with inmate Broughton. Vague, general or conclusory  allegations  are  insufficient  to  merit  relief  under  § 1983.  *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  This is also true of his conclusory allegation that " [Mitchem] overworked the staff he had by allowing them to work double and [triple] shifts 3 and 4 days a week,  [a]t the risk of his staff and prisoners under his

control." (Document #17) at 8. Plaintiff sets out no lengthy factual incidents which exemplify the type of widespread, rampant and continuing violence at W.E. Donaldson Correctional Facility necessary to put the defendants on notice of the precise type of danger in which plaintiff complains he was subjected.

Plaintiff has failed to show he was exposed to a substantial risk of objectively serious harm such that defendants Coleman, Mitchem or Haley were aware of said risk and the possible harm which could result from it. Plaintiff's claim that defendant Coleman failed to protect him also fails to state a claim against Coleman for an additional reason. In light of the above discussion, Coleman's actions, if proven, show that he was negligent in failing to adhere to his assignment rover. It is well settled that mere negligence will not support an action under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986). Therefore, plaintiff has failed to show that the defendants Coleman, Mitchem or Haley were deliberately indifferent to his plight and summary judgment is due to granted as a matter of law in favor of the defendants, the Court finding no genuine issue of material fact on such claim.

To the extent the plaintiff claim that defendant Mitchem is liable in his supervisory capacity for failing to protect the plaintiff, the plaintiff's claims are due to be dismissed. Under this scenario, plaintiff's claims against defendant Mitchem are "for lack of security based on [defendant Coleman and other unknown officers] not being in the cell block when [p]laintiff was assaulted . . . . This claim seeks to impose liability on [defendant Mitchem]

18

for the acts or omissions of his subordinate. In a § 1983 action, however, a supervisory official can only have liability imposed if he was personally involved in a constitutional deprivation or if his custom or policy caused the constitutional deprivation." *Roy v. Johnson*, 97 F.Supp. 1102, 1112-13 (S.D. Ala. 2000) (*citing Geter v. Wille*, 846 F.2d 1352, 1354 (11th Cir.) *cert. denied*, 488 U.S. 1043 (1989)). (other citations omitted). Defendant Mitchem was not personally involved in the incident, and there has been no valid showing that a custom or policy of defendant Mitchem was involved in the incident. As such, plaintiff's attempt to hinge defendant Mitchem's liability upon action or inaction taken in Mitchem's supervisory capacity is due to be dismissed and summary judgment is due to be granted as a matter of law in favor of defendant Mitchem, the Court finding no genuine issue of material fact on such claim.

To the extent the plaintiff alleges that defendant Haley is liable in his supervisory capacity, said claims are due to be dismissed. Plaintiff has not contradicted Haley's assertion that he is has no personal knowledge of the plaintiff, no personal involvement in incident, nor is he responsible for the ongoing daily operations of W.E.Donaldson Correctional Facility. Therefore, in consideration of the legal standard heretofore enunciated in behalf of defendant Mitchem in the previous paragraph, plaintiff's claims against defendant Haley in his supervisory capacity are due to be dismissed and summary judgment is due to be granted as a matter of law in favor of defendant Haley, the Court finding no genuine issue of material fact on such claim.

19

An Order consistent with this opinion shall be entered contemporaneously herewith.

DONE this the 14th day of January, 2002.

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE